## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### Jacksonville Division

_____

ENVIRONMENT AMERICA, INC.,
d/b/a ENVIRONMENT FLORIDA and
SIERRA CLUB

        Plaintiffs,                            Case No: 3:17-cv-272-32 TJC-JRK
            v.

PILGRIM'S PRIDE CORPORATION,

        Defendant.

_____


### PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiffs Environment America, Inc., d.b.a. Environment Florida,[1] and Sierra Club ("Plaintiffs") submit this Memorandum in Opposition to the Motion to Dismiss (ECF 8, "Defendant's Motion") filed by Defendant Pilgrim's Pride Corporation ("Pilgrim's").

Pilgrim's motion is not only without substance; it also fails to mention two cases from U.S. District Courts in Florida that directly contradict its argument that Plaintiffs have failed to make a good faith allegation of ongoing violations:  *St. Johns Riverkeeper, Inc. v. Jacksonville Electric Authority*, Nos. 3:07-cv-739 & 3:07-cv-747, 2010 WL 745494 (M.D. Fla. March 1, 2010), and *Apalachicola Bay and River Keeper, Inc. v. Gulf Power Co.*, No. 4:14-cv-268, 2014 WL 11512203 (N.D. Fla. September 26, 2014).

### NATURE OF THE CASE AND FACTUAL BACKGROUND

Plaintiffs filed a Complaint on March 9, 2017 ("ECF 1") and an Amended Complaint on

---

[1] Environment Florida is an active entity registered as a fictitious name (or "doing business as") with the Florida Department of State, Division of Corporations, as of June 2, 2017.  http://dos.sunbiz.org/ficinam.html (last visited June 8, 2017).

April 5, 2017 ("ECF 6").

Pilgrim's owns the Live Oak Florida Processing Plant in Live Oak, Florida (the "Plant").

ECF 6, ¶ 2.  Chickens are slaughtered, bled, scalded, de-feathered, eviscerated, cut up, deboned,

and packed at the Plant.  *Id*. ¶ 3.  Pilgrim's also operates a hatchery at the Plant to produce chicks

that are distributed to contract growers.  *Id*. ¶ 4.

Wastewater generated at the Plant is discharged into the Suwannee River.  *Id*. ¶ 5.  The

Suwannee River is an "Outstanding Florida Water" designated by the State of Florida as a

"Special Water … of exceptional recreational or ecological significance."  *Id*. ¶ 1.  Pilgrim's has

a permit issued pursuant to the National Pollutant Discharge Elimination System ("NPDES") of

the Clean Water Act ("CWA" or "Act") that governs its wastewater discharge.  *Id*. ¶ 6; *see* 33

U.S.C. § 1342 (establishing the NPDES permit program).  Pilgrim's NPDES permit was issued

by the Florida Department of Environmental Protection ("FDEP"), to which the U.S.

Environmental Protection Agency has delegated the authority to issue NPDES permits.  ECF 6, ¶

7; 33 U.S.C. § 402(b).  A violation of a NPDES permit is a violation of the CWA.  ECF 6, ¶ 8;

33 U.S.C. § 1311(a); *St. Johns Riverkeeper*, 2010 WL 745494, at *3.  "Violation of NPDES

permit limitations is a strict liability offense."  *Altamaha Riverkeepers v. City of Cochran*, 162 F.

Supp. 2d 1368, 1373 (M.D. Ga. 2001); *see generally St. Johns Riverkeeper*, 2010 WL 745494, at

*7 (quoting *Am. Canoe Assoc., Inc. v. Murphy Farms, Inc.*, 412 F.3d 536, 539-540 (4th Cir.

2005)) ("the CWA creates a regime of strict liability for its standards").[2]

In Section 505 of the Act, Congress authorized citizens to file suit in federal court against

any person who is "alleged to be" in violation of a NPDES permit, and to seek court enforcement

of that permit.  ECF 6, ¶ 16; 33 U.S.C. § 1365.  Here, Plaintiffs, two environmental groups,

---

[2] The Court in *St. Johns Riverkeeper* provides an overview of the CWA and the NPDES permit program.  2010 WL 745494 at * 3.

allege that Pilgrim's has repeatedly violated the limits in the Plant's NPDES permit for chronic

toxicity, specific conductance, nitrogen, and carbonaceous biological oxygen demand

("CBOD").  ECF 6, ¶¶ 9, 173-206, 208-44, 246-64, 266-95.  Plaintiffs allege that Pilgrim's will

continue to violate its NPDES permit after the dates the original Complaint and Amended

Complaint were filed.  *Id.* ¶ 10.  Both Plaintiff groups have members in North Florida who

regularly use the Suwannee River and are negatively affected by Pilgrim's illegal pollution.[3]  *Id.*

¶¶ 24-25, 318-35.  Plaintiffs seek relief including a declaration that Pilgrim's has violated and is

in violation of the CWA and its NPDES permit; an order requiring Pilgrim's to comply with its

permit, and to implement measures to remedy, mitigate, or offset the harms caused by the

violations; and imposition of a monetary civil penalty.  *Id.* "Relief Requested."

Further facts are included in the Argument section below.

## ARGUMENT

I.     **PLAINTIFFS PROPERLY PLEADED THAT PILGRIM'S NPDES PERMIT VIOLATIONS ARE ONGOING, AND THIS COURT THUS HAS SUBJECT MATTER JURISDICTION.**

In its motion, Pilgrim's admits that it has exceeded its NPDES permit limits.  ECF 8, p.

22 ("Pilgrim's Pride reported exceedances of permit limits to FDEP for total nitrogen, CBOD,

conductivity and chronic toxicity").[4]  However, it claims that these violations ceased by the time

---

[3] Pilgrim's suggests that "Plaintiffs are not a group of local concerned citizens."  ECF 8, page 18 n. 13.  Like other environmental organizations, Plaintiffs have local chapters and staff across the country who work on environmental issues and bring citizen suits on behalf of local members.  *See Natural Resources Defense Council, Inc. v. South Coast Air Quality Management District*, No. CV-08-05403, 2010 WL 939990 (C.D. Cal. Jan.7, 2010) (NRDC headquartered in New York City); *Greenpeace, Inc. v. Waste Technologies Industries*, No. 4:93-cv-0083, 1993 WL 134861 (N.D. Ohio 1993) (Greenpeace headquartered in Amsterdam, Netherlands).  Moreover, while Pilgrim's casts aspersions on environmental groups bringing citizen suits, ECF 8, p. 22, the Eleventh Circuit has held otherwise. "Citizen suits are a proven enforcement tool.  They operate as Congress intended—to both spur and supplement to government enforcement actions."  *Black Warrior Riverkeeper, Inc. v. Cherokee Mining, LLC*, 548 F.3d 986, 989 (11th Cir.2008), citing S.Rep. No. 99–50, 28 (1985).

[4] *See also* Defendant's Motion, pp. 9 (admitting total nitrogen and CBOD "exceedances"); 10 (admitting specific conductance "exceedances"); 11 (admitting that failed chronic toxicity tests that pre-dated a 2015 consent order violated the permit).

Plaintiffs filed their initial Complaint and that Pilgrim's informed Plaintiffs of this before suit was commenced.  Pilgrim's argues that, accordingly, "Plaintiffs fail to allege that Pilgrim's violations were ongoing" as required by the CWA (ECF 8, pp. 3, 12-13), and that this Court thus does not have subject matter jurisdiction to hear this case.  This argument misconstrues both the applicable law and the nature of Plaintiffs' factual allegations.

> ### A.      To Obtain Subject Matter Jurisdiction, Plaintiffs Are Required Only To Allege, Not Prove, That Pilgrim's Violations Are "Ongoing."

The CWA authorizes citizen enforcement suits against persons who are "alleged to be in violation of…an effluent standard or limitation." 33 U.S.C. § 1365(a)(1).  The Supreme Court has held that "in violation" means "a state of either continuous or intermittent violation – that is, a reasonable likelihood that a past polluter will continue to pollute in the future." *Gwaltney of Smithfield v. Chesapeake Bay Found.*, 484 U.S. 49, 57 & 64; (1987) ("*Gwaltney II*"); *Atl. States Legal Found. v. Tyson Foods, Inc.*, 897 F.2d 1128, 1133 (11th Cir. 1990) (quoting *Gwaltney II*). The Supreme Court referred to "a state of either continuous or intermittent violation" as an "ongoing violation." *Gwaltney II* at 58-59, 64-66.

The Supreme Court made clear that a good faith allegation of an ongoing violation provides jurisdiction. *Gwaltney II*, 484 U.S. at 64 ("§ 505 confers jurisdiction over citizen suits when the citizen-plaintiffs make a good-faith allegation of continuous or intermittent violation") & 65 (a "good-faith allegation" of an ongoing violation will "suffice for jurisdictional purposes"); *accord Tyson*, 897 F.2d at 1133 (citing *Gwaltney II*); *St. Johns Riverkeeper*, 2010 WL 745494, at * 4 (citing *Tyson*). "The Supreme Court stressed that citizen-plaintiffs need not *prove* their allegations of ongoing noncompliance before jurisdiction attached under section 505. Instead, a good faith allegation of violations that continued at the time suit was filed is sufficient for jurisdictional purposes." *Tyson*, 897 F.2d at 1133 (citing *Gwaltney II*, 481 U.S. at 64)

(emphasis in original); *St. Johns Riverkeeper*, 2010 WL 745494, at * 4 (CWA citizen suit "plaintiffs need not prove an ongoing violation to invoke jurisdiction"). Only *after* jurisdiction attaches must a CWA citizen suit plaintiff "ultimately prove an ongoing violation to prevail on the merits." *St. Johns Riverkeeper*, 2010 WL 745494, at * 4 (citing *Parker v. Scrap Metal Processor, Inc.*, 386 F.3d 993, 1010 (11th Cir. 2004)); *Tyson*, 897 F.2d at 1135; *Murphy Farms*, 327 F.3d at 521; *accord Arkansas Wildlife Fed'n v. Bakaert Corp.*, 791 F. Supp. 769, 778 (W.D. Ark. 1992).[5]

### B. Pilgrim's Facial Challenge To Jurisdiction Should Be Denied.

Pilgrim's makes a "facial" challenge to subject matter jurisdiction under Rule 12(b)(1). ECF 8, pp. 19 & 20. "Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint." *Commodity Futures Trading Commission v. G7 Advisory Servs., LLC*, 406 F. Supp. 2d 1289, 1292 (S.D. Fla. 2005) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). As this Court has stated, "When a defendant mounts a facial attack, the court must construe the complaint in the light most favorable to the plaintiff and accept all well-pled facts as true." *Bell v. Atl. Trucking Co., Inc.,* 3:09–cv–406–J–32MCR, 2009 WL 4730564, at *2 (M.D. Fla. Dec. 7, 2009) *aff'd*, 405 Fed.Appx. 370 (11th Cir. 2010), citing *Sinaltrainal v. Coca-Cola Co.*, 578 F.2d 1252, 1260 (11th Cir. 2009) and *McElmurray v. Consol. Gov't of Augusta-Richmond County*, 501 F.3d 1244, 1250 (11th Cir. 2007)). Although Pilgrim's submits a declaration from one of its employees, Stephen James, this document is irrelevant to the facial challenge because it is extrinsic evidence. *State of Alabama v. Ctrs. For Medicare & Medicaid*

---

[5] For both the jurisdictional inquiry (proof of "good faith" allegations of ongoing violations) and the merits inquiry (proof of ongoing violations), the focus is on whether there was a reasonable likelihood of future violations at the time suit was filed – and not, as Pilgrim's seems to argue, on whether a new violation happened to be occurring at the instant the complaint entered the Court's ECF system. *Chesapeake Bay Found. v. Gwaltney of Smithfield, Ltd. ("Gwaltney III")*, 844 F.2d 170, 172 (4th Cir. 1988); *Carr v. Alta Verde*, 931 F.2d 1055, 1061 (5th Cir. 1991) ("It does not suffice to defeat subject matter jurisdiction that the success of the attempted remedies becomes clear months or even weeks after the suit is filed.") (citation omitted).

*Servs.*, No. 208-cv-81, 2010 WL 1268090, at *3 (M.D. Ala. March 30, 2010) (rejecting extrinsic evidence in a facial challenge to jurisdiction).

Courts have held in CWA citizen suits that "[t]he test of good faith is whether it appears to be a 'legal certainty' that the jurisdictional fact is not satisfied." *Chesapeake Bay Found. v. Gwaltney of Smithfield, Ltd. ("Gwaltney I"),* 611 F. Supp. 1542, 1549 n. 8 (E.D.Va.1985) (citations omitted), *aff'd,* 791 F.2d 304 (4th Cir.1986*), vacated on different grounds* in *Gwaltney II,* 484 U.S. 49*; accord Ohio Envtl. Coalition, Inc. v. Alex Energy, Inc.*, 12 F. Supp. 3d 844, 865 (S.D. W.Va. 2014).  In other words, to defeat jurisdiction it must appear from the face of the complaint that there is a "legal certainty" that violations are *not* continuing (ongoing).  It cannot seriously be contended that such a legal certainty exists here.

A continuing violation is one where the "risk of defendant's continued violation had" not been "completely eradicated when the citizen-plaintiffs filed suit."  *Chesapeake Bay Found., Inc. v. Gwaltney of Smithfield Ltd.*, 844 F.2d 170, 172 (4th Cir.1988) ("*Gwaltney III*"); *accord Gwaltney II*, 484 U.S. at 69 (Scalia, J., concurring) ("the dubious state in which a past effluent problem is not recurring at the moment but the cause of that problem has not been completely and clearly eradicated" is not a state of compliance); *Tyson*, 897 F.2d at 1136, n. 15 (citing *Gwaltney III*); *St. Johns Riverkeeper*, 2010 WL 745494, at * 5 (quoting *Gwaltney III* at 172, "Intermittent or sporadic violations do not cease to be ongoing until the date when there is no [reasonable] likelihood of repetition").  "[Plaintiffs] need not show post-Complaint acts or discharges, nor must they allege continuous violations, to demonstrate that the violations alleged were ongoing at the time the suits commenced." *St. Johns Riverkeeper*, 2010 WL 745494, at *6.  "Chronic episodic violations" are ongoing violations.  *Gwaltney II*, 484 U.S. at 65; *accord Apalachicola Bay*, 2014 WL 11512203, at * 7.

Even "significant steps to reduce" violations are not a basis for dismissing a citizen suit if the remedial measures result only "in a downward trend of [violations], not a fix beyond reasonable probability." *St. Johns Riverkeeper*, 2010 WL 745494, at *7; *see Gwaltney I*, 611 F. Supp. at 1549, n.8 (plaintiffs had sufficiently pled continuing violations in good faith where "there was no certainty that [the defendant's remedial] system would correct one of the two major violation problems for which this suit was brought …."). As one court in this Circuit stated, the requirement to make a good faith allegation of an ongoing violation is a "low jurisdictional threshold." *Apalachicola Bay*, 2014 WL 11512203, at * 7.

Here, Plaintiffs allege that "Pilgrim's will continue to violate its NPDES permit after the date[s]" the Complaint and Amended Complaint were filed. ECF 6, ¶ 10. *See also* ECF 6, ¶¶ 205-06, 242-43, 264 and "Relief Requested" (a). And as set forth below, the pleadings allege specific facts supporting these allegations of ongoing violations. Taking Plaintiffs' allegations as true, it is clear that the Plaintiffs' Complaint and Amended Complaint contain good faith allegations of continuing (ongoing) violations.

### 1. A Florida DEP inspector recently found that the Plant is having problems meeting its NPDES permit limits.

In its motion, Pilgrim's ignores Plaintiffs' allegations regarding the findings of an FDEP wastewater inspector, Herndon Sims. On February 3, 2017, Mr. Sims wrote a memo to other FDEP officials (ECF 1-13 and ECF 6-13, attached as Ex. 10 to both the Complaint and Amended Complaint) stating that there are "significant noncompliance issues" at the Plant, and that Pilgrim's "is still having issues with meeting the permit limits." ECF 6, ¶¶ 11, 233, 259, 295. This memo was written less than five weeks before the Complaint was filed and less than nine weeks before the Amended Complaint was filed. The memo also lists daily, monthly, and annual violations of permit limits for specific conductance, total nitrogen, and CBOD from May 2015 to

September 2016, and concludes that enforcement is appropriate because of the "significant" noncompliance issues that have persisted despite prior enforcement orders.  ECF 6-13, p. 5.  Mr. Sims' findings by themselves establish the good faith of Plaintiffs' allegations.

> **2.      Pilgrim's discharge monitoring reports show violations were repeated many times and occurred close to the time the Complaint and Amended Complaint were filed.**

Other evidence alleged in the pleadings also demonstrates a reasonable likelihood violations will recur.  All the limits at issue in this case are alleged to have been repeatedly violated.[6]  And the most recent violations are alleged to have occurred close to the time the pleadings were filed:

- The *chronic toxicity* limit, generally measured quarterly, was violated in January 2017.  ECF 6, ¶ 176.[7]

- The *specific conductance* limit was violated in December 2016.  ECF 6, ¶ 213.

- The *total nitrogen* limit was violated in November 2016.  ECF 6, ¶ 256.

- Two *CBOD* limits were violated in January 2017.  ECF 6, ¶¶ 276, 280.

These allegations compare favorably to those found to have established good faith in *Apalachicola Bay*.  There, the court on a motion to dismiss found allegations of ongoing copper violations to be in good faith where there had been only three violations (many fewer than the number of violations for each limit alleged here) and where the most recent violation had occurred four months before the plaintiffs filed their complaint.  *Apalachicola Bay*, 2014 WL 11512203, at *7.  In contrast, the *Apalachicola Bay* court found that the complaint did *not*

---

[6] ECF 6, ¶¶ 176-202 (chronic toxicity), 213-35 (specific conductance), 248-61 (total nitrogen), 273-95 (CBOD).

[7] Due to a typographical error, these paragraphs state that this violation occurred over the period from "1/01/2016-1/31/2017"; the correct violation period is "1/01/*2017*-1/31/2017."  Attached as Exhibit 2 to the accompanying Govern Declaration is Pilgrim's January 2017 discharge monitoring report ("DMR"), on which Pilgrim's reported this violation.  Since pleadings will generally be deemed to be conformed to the facts proven, Plaintiffs do not believe that they need to formally amend the complaint to correct this error.  However, should the Court prefer a motion to amend, Plaintiffs stand ready to file such a motion.

contain a good faith allegation of ongoing lead violations where there had been only one such violation, occurring nearly four years before the complaint was filed. *Id.* at 6.

Here, Pilgrim's claim of two or three months without a violation, even if true, is insufficient to establish that future violations will not occur. Plaintiffs' allegations show a pattern of intermittent violations, and intermittent periods of compliance, over the past five years for all four of the parameters at issue. ECF 6, ¶¶ 173-295. For example, the Plant had compliance periods that ranged between one and four months for the specific conductance parameter six times in the past four years, yet continued to commit specific conductance violations thereafter. ECF 6, ¶¶ 213-29.

### 3. Pilgrim's own written statements show that the violations are ongoing.

#### a. Stephen James' January 24, 2017, letter.

The pleadings allege that Stephen L. James, Pilgrim's Southeast Director of Environmental Engineering, wrote a letter to FDEP inspector Sims dated January 24, 2017 (approximately six weeks before the Complaint was filed), "indicating that Pilgrim's does not fully understand the cause of the chronic toxicity 'problem,'" and that "[i]n the same letter, Mr. James stated that the addition of 'antimicrobial interventions in more locations in more of the process' has potentially added to the toxicity of the Plant's effluent." ECF 6, ¶ 204. Plaintiffs also allege the letter stated that "[s]pecific conductivity has been an intermittent issue with no discernable source" and that the antimicrobial interventions have added to the conductivity of the Plant's effluent. ECF 6, ¶ 236. The James letter is attached to both pleadings as Exhibit 9 (ECF 1-12; ECF 6-12). The James letter further demonstrates that the allegations of ongoing violations were made in good faith.

### b.      Winston K. Borkowski's February 27, 2017, letter.

Plaintiffs received a letter dated February 27, 2017, from Pilgrim's counsel, Winston K.

Borkowski, on February 28, 2017.  Plaintiffs' pleadings contain allegations regarding the letter,

attached to both pleadings as Exhibit 11 (the "Borkowski Letter"; ECF 1-14; ECF 6-14).

Although Pilgrim's emphasizes the letter in its motion, the contents of the letter actually support

Plaintiffs' allegations that violations are ongoing.

Mr. Borkowski's letter never definitively states that the actions purportedly taken by

Pilgrim's will prevent future violations.  Rather, it employs uncertain terms when explaining the

causes of the violations and the supposed fixes.  ECF 6-14, pp. 3 ("*suspected* source of the

exceedances" and "*likely* source"); 4 ("*likely* cause" and "the interim measure *should minimize*

the potential for future exceedances").  What the letter shows is that measures Pilgrim's claims to

have taken have not "eradicated" the risk of future violations.  More specifically, with respect to

each limit:

*Nitrogen*.  The Borkowski Letter attributes nitrogen violations to damaged denitrifying

filters but does not say that the underlying problem that caused the damage has been fixed.  Nor

does it offer any assurance that the denitrifying filters will not fail again.  ECF 6-14, p. 2.

Rather, Pilgrim's admits that "further assessment of the denitrifying system" will be necessary,

suggesting that the issues leading to the violations are not completely solved.  *Id*.

Moreover, Pilgrim's took its time in addressing nitrogen problems at the Plant.  Pilgrim's

violated its nitrogen limit in December of 2015, and then eight more times over the next eleven

months.[8]  ECF 6, ¶¶ 248-256.  Yet the Borkowski Letter suggests it did not disassemble and

---

[8] Pilgrim's claims, without explanation, that the nitrogen violation in November 2016 was a calculation error
(Defendant's Motion, p. 14 n.8), but Defendant has a "heavy burden" when impeaching its own discharge
monitoring reports ("DMRs").  *See United States v. STABL, Inc.*, 800 F.3d 476, 485 (8th Cir. 2015) ("Allowing a

inspect the filters for damage until October of 2016.  ECF 6-14, p. 2.  This track record does not inspire confidence that future violations will not occur.

*CBOD*.  The Borkowski Letter states that "a malfunctioning flow meter circuit board" was a "likely" cause of CBOD exceedances.  There is no explanation of the nature of the circuit board malfunction, so it is impossible to evaluate the letter's claim.  The letter also claims that a January 2017 CBOD violation "was suspected to be correlated with a die-off of floating duckweed."  ECF 6-14, p. 3.  But as a court in this District noted, "correlation does not equal causation," and "even a strong correlation is often spurious and misleading when masqueraded as causal evidence, because it does not adequately account for other contributory variables." *Highland Holdings, Inc. v. Mid-continent Casualty Co.*, No. 8:14-cv-1334, 2016 WL 3447523, at *3, n.8 (M.D. Fla. June 23, 2016) (citations omitted).  Moreover, Pilgrim's has not stated that the duckweed problem has been solved, or that there will be no CBOD exceedances in the future. The Borkowski Letter states only that no exceedances "related to excessive methanol injection" have occurred recently.  ECF 6-14, p. 3.

*Specific Conductance*.  Violations of the specific conductance limit have occurred at the Plant on an intermittent basis for over four years (June 2012 - December 2016).  ECF 6, ¶¶ 213-229.  The Borkowski Letter states that one of Pilgrim's water wells is "*suspected* to have been contributing elevated conductivity levels" and "is the *likely* cause" of the violations.  ECF 6-14, p. 3 (emphasis added).  According to the letter, a replacement well is needed, *id.*, but there is no mention of whether the old well will be reactivated if a replacement well cannot be found, or any assurance that a replacement well will not also contribute to conductivity problems.  Rather, as Pilgrim's acknowledges in its motion, "[a]ll of the wells may have been contributing in some

permit holder to impeach its own DMRs simply by pointing to potential laboratory error, without specific evidence demonstrating that the laboratory error likely resulted in over-reporting of pollutant levels that were in fact within permit limitations, would subvert Congress's purpose in enacting the monitoring and reporting requirements.").

part to the inconsistent water quality."  ECF 8, p. 11 n.7.  The Borkowski Letter also admitted

that there is at least one other likely cause (food safety additives) and that the company "will

continue to assess facility-wide sources of ions that may contribute to high conductivity."  ECF

6-14, p. 3; *see also* ECF 8, pp. 10 & 24 ("facility wide assessment" of specific conductance

problem is ongoing).

      *Toxicity*.  Toxicity violations have occurred at the Plant on a consistent basis for over five

years.  ECF 6, ¶¶ 176-196.[9]  The Borkowski Letter provides no assurance that the sources of

these violations have been identified and eradicated.  It notes that new food safety regulations

"are thought" to be raising conductivity or "contributing other ions" that affect toxicity (ECF 6-

14, p. 4), but does not identify any measures to address this problem.  The letter also states that

"one of the facility source water wells appears likely to be a source of the problem," and that the

company is "continuing to identify, plan and implement long-term corrective measures."  *Id*.

The letter also confirms that toxicity violations continued even after certain corrective measures

"appeared to resolve" the matter for some period of time.  *Id*.  In fact, Pilgrim's concedes in its

motion that it has not solved the toxicity problem.  ECF 8, pp. 24 ("facility-wide assessment" of

toxicity-causing products used in processing is "ongoing") & 11 ("additional exceedances were

documented" even after "corrective measures" were taken to address toxicity).

      The court in *Apalachicola Bay*, 2014 WL 11512203, recently rejected a "lawyer's letter"

gambit like the one deployed here.  There, the defendant, a power plant also represented by Mr.

---

[9] Pilgrim's argues that toxicity exceedances between 4/10/15 and 12/31/16 were not permit violations due to interim limits set by the 2010 and 2015 consent orders (Defendant's Motion, p. 8 n.6).  However, as a matter of law, administrative enforcement orders cannot amend permit limits.  This argument is unavailing.  *See Citizens for a Better Environment v. UNOCAL*, 83 F.3d 1111, 1119 (9th Cir. 1996); *Culbertson v. Coats American, Inc.,* 913 F.Supp. 1572, 1580 (N.D. Ga. 1995); *Congaree Riverkeeper, Inc. v. Carolina Water Service, Inc.,* 3:15-cv-00194-MBS, 2017 WL 1176766, *11 (D.S.C. March 30, 2017) ("If a permit modification fails to comply with the modification procedures, especially public participation, the lawsuit will proceed on the terms of the original permit").  Moreover, these orders do not purport to override the permit's discharge limits for toxicity.  Plaintiffs cited language from each administrative order in the pleadings to explain that the interim limits do not amend the permit limits.  ECF 6, ¶¶ 144-46 (2010 CO); 161-66 (2015 CO).

Borkowski, argued "that Plaintiffs lack good faith because they failed to address the letter written by Mr. Borkowski 'explaining what measures were taken to terminate the exceedances of the copper effluent limitation.'" *Id.* at 6. The court ruled, in language applicable here,

> Defendant's letter, sent after Plaintiffs' notice letter but before Plaintiffs filed suit, is nothing more than a representation that Defendant's measures will lead to compliance. Defendant's position would divest any court of subject matter jurisdiction whenever an alleged violator promised to comply with effluent limitations. Such an outcome is untenable.

*Id.* Further, the court ruled, again in language applicable here,

> Defendant also overstates the letter's assurances. The letter certainly explains that Defendant "is now operating in a manner, and will continue to operate in a manner, that results in the copper effluent limitations being met." ECF No. 6-4, at 1. But there are caveats to this general statement. Notably, Defendant has not shown - at least not so unequivocally that it can be said Plaintiffs' Count V lacks good faith - that it can remain in compliance with copper effluent limitations "while generating electricity," which happens during extreme temperatures.

*Id.* at 7.

### C.    Pilgrim's Factual Challenge To Jurisdiction Should Be Denied.

Pilgrim's also makes a "factual challenge" to subject matter jurisdiction under Rule 12(b)(1). ECF 8, pp. 19-20. In a factual challenge, matters outside the pleadings are considered, *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990), but uncontroverted factual allegations are accepted as true, *e.g., Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993); *Westcode, Inc. v. Mitsubishi Electric Corp.*, 171 F. Supp. 3d 43, 47 (N.D. N.Y. 2016); *Bircher v. Bank of New York Melon*, No. 4:12-cv-171, 2012 WL 3245991, at * 2 (N.D. Tex. August 9, 2012); *see Minsburg Int'l Frontier Devices, Inc.*, 8:10-cv-1589, 2011 WL

1336400, at * 1 (M.D. Fla. April 7, 2011) (uncontroverted allegations taken as true in a 12(b)(1) motion).[10]

Pilgrim's submits a declaration from employee Stephen James (ECF 8-1), which essentially repeats what is in the Borkowski Letter.  But Pilgrim's does not dispute it exceeded its NPDES permit limits as set forth in the Complaint and Amended Complaint.  It does not take issue with the documents attached to the pleadings.  It does not claim that FDEP's findings that the Plant has "significant noncompliance issues" and "is still having issues with meeting the permit limits" were false.  Thus, all of the arguments set forth above in response to the facial attack analysis apply to the factual attack as well.  Moreover, materials outside the pleadings, including Mr. James' declaration, all support the good faith of Plaintiffs' allegations of ongoing violations.

### 1.      The draft consent order between FDEP and Pilgrim's.

Pilgrim's obliquely refers to a "pending enforcement order" in its motion.  Defendant's Motion, pp. 8 n.6 & 23.  A copy of a draft of this order ("Draft Order"), which is a consent order being negotiated between FDEP and Pilgrim's, is attached as Exhibit 1 to the accompanying declaration of Heather A. Govern ("Govern Declaration").  The Draft Order was uploaded to FDEP's Oculus database on March 22, 2017, which was between the filing of the Complaint and the filing of the Amended Complaint.  The Draft Order supports Plaintiffs' allegations of ongoing violations.

First, the Draft Order would require Pilgrim's to "submit a proposed … Solution[] to the Department to reduce and meet final effluent limits for Specific Conductance, Carbonaceous

---

[10] Pilgrim's itself, at ECF 8, p. 19, cites a case holding that a pleading's allegations can be considered evidence in a factual challenge to jurisdiction.  *Richmond, Fredericksburg & Potomac R.R. Co. v. U.S.*, 945 F.2d 765, 768 (4th Cir. 1991).

BOD, …Total Nitrogen and Chronic Toxicity as specified in the Permit." Draft Order, p. 6, ¶ 8.

"The Solution shall detail the steps necessary to achieve compliance." *Id.* at ¶ 8(a). Seeking

such a "Solution" would be unnecessary had Pilgrim's already "eradicated" the potential for

further violations.

Second, the Draft Order provides that a previously-submitted plan to achieve compliance

with the CBOD limit "will be revised and incorporated in the Solution for Department approval."

*Id.* at ¶ 8(b). The CBOD plan would not need revision if it had already eliminated violations.

Third, the Draft Order flags a continuing problem relating to specific conductivity: "it is

unclear how production requirements will be met without additional [water] capacity," now that

a potentially problematic well has been taken out of service. *Id.*, p. 5, ¶ 6(d). If the well needs to

be reactivated to meet production requirements, or if newly-drilled wells contribute to

conductivity, violations presumably would continue.

Fourth, the Draft Order refers to "the continuing intermittent toxicity problem." *Id.* at ¶

6(e). It identifies a number of possible causes. *Id.* It would require Pilgrim's to revise a

Toxicity Plan of Study, including a review of the chemicals used at the Plant, including new ones

used for disinfection, "which may interfere with or be related to toxicity." *Id.*, p. 7, ¶ 8(d)(ii). A

further Toxicity Identification Evaluation is required if "the toxicity continues consistently." *Id.*

at ¶ 8(d)(4). None of this would be required if toxicity violations were already solved.

Fifth, the Draft Order makes clear that FDEP will allow Pilgrim's to continue violating.

The order would not require compliance with the limits at issue in this case until April 28, 2018.

*Id.*, pp. 7, ¶ 8(e) & (f), 10, ¶ 10. Even if the draft order is eventually entered, there is no

guarantee it will prevent future violations even by that date, given that two previous consent orders did not bring the Plant into compliance with any of its limits.  ECF 6, ¶¶ 147, 168-72.[11]

### 2.   The James Declaration.

Like the Borkowski Letter, the James Declaration makes clear that Pilgrim's has not eliminated (and does not have a good handle on) the causes of its permit violations:

- Mr. James does not actually claim that the risk of continuing violations has been eradicated or that there will be no future violations of any of the limits.

- Pilgrim's thought it had identified and corrected "the most likely source" of CBOD exceedances, but then another violation occurred.  James Dec. ¶¶ 5-6.  Mr. James makes no mention of any effort to control the duckweed problem that "is thought to have caused" a January 2017 CBOD exceedance.

-  A water well is "thought to be" a "contributing cause" of failed toxicity tests, which again is not definitive and suggests there also are other causes.  *Id.* at ¶ 8.  Mr. James also states that continued efforts are required to achieve compliance with specific conductance and toxicity:  "Pilgrim's Pride is pursuing near-term and long-term modifications to insure a consistent source of quality water."  *Id.* at ¶ 10. *See also id.* at ¶ 11 ("Because of the age of the entire well system, a long-term plan for upgrading the wellfield will be developed and implemented").

- Pilgrim's believes it has identified "the likely cause" of the nitrogen exceedances, which indicates that the cause has not been definitively identified.  *Id.* at ¶ 7.

### 3.   The declaration of Plaintiffs' expert, Wane Schneiter.

Plaintiffs submit the declaration of Wane Schneiter (attached hereto as Exhibit 4), an engineering expert with 35 years of experience working on industrial wastewater treatment projects, including those at poultry processing plants.  After reviewing salient documents relevant to this motion (Schneiter Dec. ¶ 2), Dr. Schneiter concluded, "The described actions taken by the Facility do not address potential future violations from further unit process deterioration."  *Id.* at ¶ 5.  Dr. Schneiter opines that Pilgrim's "[r]eactive responses are stopgap in

---

[11] Plaintiff's note that the Draft Order belies Pilgrim's assertion that the plant has caused no appreciable harm to the Suwannee River.  ECF 8, pp. 15-16.  FDEP points out that the Pilgrim's discharges violated Fla. Admin. Code § 62-620.300(5), "which states that it is a violation to cause pollution so as to harm or injure human health or welfare, animal, plant, aquatic life, or property."  Draft Order, p. 4.

nature, and they suggest a future incremental failure scenario – that is, future recurring violations." *Id*.  It is also his opinion that "prevention of the continuation of NPDES permit violations in the future will require additional compliance measures beyond those taken thus far at the Facility." *Id.* at ¶ 7.  Dr. Schneiter outlines potential measures to address the Plant's problems.  *Id.*  The bases for these opinions are explained by Dr. Schneiter, and will not be repeated here.  *See* Schneiter Dec. ¶¶ 4-7.

## II.    PLAINTIFFS STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Under Rule 12(b)(6), a court should refrain from dismissing a complaint for failure to state a claim "'unless it appears beyond doubt that plaintiff can prove no set of facts that would entitle him to relief.'"  *Bradberry v. Pinellas Cnty.*, 789 F.2d 1513, 1515 (11th Cir. 1986) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *Little v. City of North Miami*, 805 F.2d 962, 965 (11th Cir. 1986) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (overruled on other grounds)).  Generally, on a Rule 12(b)(6) motion the court must accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff.  *Westfield Ins. Co. v. Accessibility Specialists, Inc.*, No. 3:10-cv-1140, 2011 WL 2911528, at *1 (M.D. Fla. July 19, 2011).  However, if the court chooses to consider matters outside the pleadings, then "the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).

If the Court does not consider material outside the pleadings, then the Rule 12(b)(6) motion should be denied for the same reasons the facial challenge to subject matter jurisdiction should be denied.  When proven, the facts in the pleadings establish that Pilgrim's violations are ongoing.

If the Court does consider material outside the pleadings, then for the reasons set forth in the factual challenge to jurisdiction section, the undisputed facts show that Pilgrim's has not eradicated the causes of violations and cannot assure violations will not continue.  Thus, under Rule 56, the Court should enter a finding that the violations alleged (none of which Pilgrim's disputes) are continuing (ongoing).  *See* Rule 56(g) (court may enter an order stating any material fact that is not genuinely in dispute and treating the fact as established in the case).

## III.   THE AMENDED COMPLAINT DOES NOT VIOLATE RULE 8.

Pilgrim's complains that Plaintiffs filed "shotgun pleadings."  ECF 8, pp. 4-6.  The Eleventh Circuit has held that a shotgun pleading is one that fails to "give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015).  Pilgrim's admits this is not the case:  "Pilgrim's Pride cannot say that the amended complaint is so vague and ambiguous that it cannot reasonably prepare a response."  ECF 8, p. 6 n.4.[12]

Pilgrim's focuses on those parts of the pleadings that re-allege all previous paragraphs. Claims of shotgun pleadings have been rejected when the complaint re-incorporates and re-alleges all preceding paragraphs within every count so long as the defendants are nonetheless able to respond.  *RB Jai Alai, LLC v. Sec'y of the Fla. Dep't of Transp.*, 47 F.Supp. 3d 1353, 1366-67 (M.D. Fla. 2014) ("Although Plaintiffs' pleading technique might be redundant, Federal Defendants are able to discern Plaintiffs' allegations and should be able to properly defend themselves.").  Pilgrim's admits this is the situation here.  *See Weiland*, 792 F.3d at 1324 (even though the complaint incorporated preceding paragraphs, "this is not a situation where a failure

---

[12] If it truly thought Plaintiffs' pleadings were shotgun, Pilgrim's should have moved for a more definite statement under Rule 12(e), *Weiland*, 792 F.3d at 1331, n. 10 (11th Cir. 2015), as Pilgrim's appears to concede in the cited footnote in its motion.

to more precisely parcel out and identify the facts relevant to each claim materially increased the burden of understanding the factual allegations underlying each count").

Nevertheless, Plaintiffs have no objection to clarifying the factual allegations underlying each count; Pilgrim's may read Paragraphs 207, 245, and 265 of the Amended Complaint as: "Paragraphs 1 through 127 are re-alleged and incorporated by reference herein."

Pilgrim's also complains the pleadings are long.  First, 41 pages is not too long for the body of a complaint.  Second, Plaintiffs included a separate paragraph alleging each permit violation.  Each day of violation can be penalized up to $51,570 (40 C.F.R § 19.4), and Plaintiffs decided the best course is to put the company on notice of each violation for which it may be held liable, even if it takes up space.  Third, Pilgrim's apparently also seems to think that specific allegations of how its discharges harm the river, and how they harm Plaintiffs' members who use the river, are surplusage (ECF 8, p. 5), but such allegations are relevant to Plaintiffs' standing.

Pilgrim's also complains about the length of the attachments.  Documents may be attached as exhibits to a complaint.  Fed. R. Civ. P. 10(c); *Jones v. General Motors Corp.*, 24 F. Supp. 2d 1335, 1340 (M.D. Fla. 1998).  Usually defendants complain when documents *are not* attached.  *Allianz Global Risks U.S. Ins. Co. v. Singlesource Roofing Corp.*, 2:05-cv-603, 2006 WL 2536705, at *2 (M.D. Fla. August 31, 2006).  The wide-ranging nature of Pilgrim's motion demonstrates precisely why it is helpful to have important documents – such as the permit, public records reflecting Pilgrim's violations, and salient correspondence to and from FDEP – attached to the pleadings.[13]

---

[13] Pilgrim's complains that one of the Amended Complaint's exhibits (copies of return receipts) is hard to read but they did not contact Plaintiffs' counsel to ask for a more readable copy.  Because Plaintiffs' inadvertently attached the Environment Florida notice letter to the Amended Complaint rather than the Sierra Club notice letter, the Sierra Club letter and a more readable copy of the return receipts are attached to the Govern Declaration as Exhibit 3.

## CONCLUSION

For the reasons set forth above, Pilgrim's motion should be denied.  In the event the

Court converts any aspect of this motion to a motion for summary judgment, the Court should

find as an undisputed material fact that Pilgrim's committed the violations alleged in the

Amended Complaint and these violations are ongoing within the meaning of the CWA.


Dated:  June 8, 2017

*/s/ Andrew Bonderud*
Andrew M. Bonderud, (fl-102178)
The Bonderud Law Firm, P.A.
301 W Bay St #1433
Jacksonville, FL 32202
904-438-8082
Email: bonderudlaw@gmail.com


*/s/ David A. Nicholas*
David A. Nicholas
*Admitted pro hac vice*
20 Whitney Road
Newton, Massachusetts 02460
(617) 964-1548
Email: dnicholas@verizon.net


ATTORNEYS FOR PLAINTIFFS

*/s/ Heather A. Govern*
Heather A. Govern
Joshua R. Kratka
*Admitted pro hac vice*
National Environmental Law Center
294 Washington Street, Suite 500
Boston, MA 02108
(617) 747-4301
Email: govern.nelc@gmail.com
Email: josh.kratka@nelconline.org


## CERTIFICATE OF SERVICE

I hereby certify that on June 8, 2017, I electronically filed the foregoing document with
the Clerk of Court via the CM/ECF system, which will send a notice of electronic filing to all
registered counsel for Defendant.

/s/ *Heather A. Govern*
Heather A. Govern
*Admitted pro hac vice*
National Environmental Law Center
294 Washington Street, Suite 500
Boston, MA 02108
(617) 747-4301
Email: govern.nelc@gmail.com