UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

Jacksonville Division

ENVIRONMENT AMERICA, INC.
d/b/a ENVIRONMENT FLORIDA
and SIERRA CLUB,

    Plaintiffs,

v.

                                            Case No: 3:17-cv-272-32JRK

PILGRIM'S PRIDE CORPORATION,

    Defendant.
_____/

## CONSENT DECREE

As a result of Court ordered mediation, the parties have agreed to the following terms of this Consent Decree, which shall bind the parties. This Court retains jurisdiction to enforce the terms herein.

### I.   BACKGROUND

1. Environment America, d/b/a Environment Florida ("Environment Florida") and Sierra Club (collectively, "Plaintiffs") commenced this citizens' suit against Pilgrim's Pride Corporation ("Defendant") under the federal Clean Water Act, 33 U.S.C. 1251, *et seq.* ("CWA"), for alleged violations of the CWA at Defendant's poultry processing plant at 19740 US Highway 90 in Live Oak, Florida ("the Plant"). The alleged violations included exceedances of discharge limits for four pollutant parameters, which were reported to the Florida Department of Environmental Protection ("FDEP") by Defendant in discharge monitoring reports (DMRs) as required under the National Pollutant Discharge Elimination System ("NPDES") permit for the Live Oak facility.

2. The parties attest and the Court, by entering this Consent Decree, finds that this agreement has been negotiated by all the parties in good faith; settlement will avoid continued litigation between the parties; settlement of this matter is in the public interest and in accordance with the CWA; and entry of this Consent Decree is fair and reasonable.

3. On the date this Consent Decree is filed with the Court, Plaintiffs shall concurrently serve a copy of this Consent Decree on the United States Environmental Protection Agency ("EPA"), the Regional Administrator of EPA Region 4 and the United States Department of Justice, consistent with the requirements of 33 U.S.C. § 1365(c)(3) and 40 C.F.R. § 135.5.

## II.   JURISDICTION AND VENUE

4. For the purposes of this Consent Decree, the parties stipulate that this Court has jurisdiction over this matter under Section 505 of the CWA, 33 U.S.C. 1365 and federal question jurisdiction under 28 U.S.C. 1331. Having stipulated to the jurisdiction of this Court, the parties agree that venue is proper for this matter pursuant to 33 U.S.C. § 1365(c) and 28 U.S.C. §§ 1391(b) and (c).

## III.   APPLICABILITY

5. The obligations of this Consent Decree apply to and are binding upon the parties and their respective officers, employees, successors or assigns.

6. No transfer of ownership or operation of the facility subject to this Consent Decree shall relieve Defendant of its obligation to implement the terms of this Consent Decree unless (a) at least 30 days prior to any transfer Defendant provides notice of the proposed transfer to Plaintiffs and provides a copy of this consent decree to the transferee; (b) the transferee agrees to undertake the obligations herein and to be made a party to this action so as to

be bound by this Consent Decree; and c) Defendant and the parties move to amend the Consent Decree to substitute the transferee for Defendant in the Consent Decree.

7. Definitions. For the purposes of this Consent Decree, the following terms shall have the following meanings:

 a. "Consent Order 16-1437": consent order between Florida Department of Environmental Protection ("FDEP") and Defendant executed on June 12, 2017.

 b. "The Permit": NPDES Permit No. FL0001465 – 006 issued by FDEP on May 8, 2015 to Pilgrim's Pride Corporation ("Defendant") for the Pilgrim's Pride Live Oak Processing Plant ("the Plant") pursuant to the National Pollutant Discharge Elimination System ("NPDES") permitting program of the CWA, 33 U.S.C. § 1342.

 c. "Effluent Limitations": limitations on concentrations of total nitrogen, carbonaceous biological oxygen demand ("CBOD"), specific conductance, and IC25 chronic whole effluent toxicity ("toxicity") in the Facility's wastewater discharges, as set forth in the Permit.

 d. "Wastewater Treatment System": the system designed to collect and treat process and non-process wastewater from the Facility.

 IV. <u>COMPLIANCE AND PERFORMANCE OBLIGATIONS</u>

8. <u>Permit Limit Compliance</u>. Defendant shall comply with the following effluent limitations listed in Section I(A)(1) of NPDES Permit # FL0001465 (Permit), issued on May 8, 2015: (a) Chronic Whole Effluent Toxicity, 7-Day IC25 (Ceriodaphnia dubia and Pimephales promelas); (b) daily maximum specific conductance; (c) total nitrogen annual maximum limit (calculated as an Annual Mass Load); (d) maximum single sample (mg/L and lb/day) carbonaceous biological oxygen demand ("CBOD"); and (e) maximum monthly average (mg/L

and lb/day) CBOD. Separately for each limit, this requirement, and the requirement to pay stipulated penalties for violations of this requirement, shall terminate after 24 months of continuous compliance.

9. <u>All Pollutant Parameters</u>. Defendant shall:

    a. Bring the recently constructed well 3R online no later than 30 days of FDEP's approval of a pending public water supply well permit; bring a second new well online by no later than June 1, 2018; bring a third new well online by March 31, 2019. However, before bringing these wells online, Defendant shall test the water in them to determine whether they will cause or contribute to exceedances of toxicity or specific conductance limits in Defendant's NPDES permit, and, notwithstanding the previous sentence, will not bring them online if they do.

    b. Add one denitrification filter to its wastewater treatment plant no later than 24 months from the effect date of the consent decree. Defendant shall initiate any necessary applications for the additional denitrification filter no later than 30 days following the effective date of the consent decree.

    c. Purchase the leased reverse osmosis unit within 30 days of the effective date of the consent decree.

    d. Install and operate an online, continuous analyzer control to prevent methanol overfeed within 120 days from the effective date of the consent decree.

    e. Install and operate a new anaerobic basin no later than December 31, 2018, except that if there are permit or construction delays, no later than March 31, 2019. Defendant shall begin preparation of the appropriate permit applications for the

installation of a new anaerobic basin within 30 days of the effective date of the consent decree.

    f.    Provisions (a) through (e) shall not apply if, before the deadlines contained in them, discharge of effluent to the Suwannee River has been scheduled to be eliminated, as a result of Defendant implementing an alternative approved by FDEP under paragraph 7(c) of Consent Order 16-1437. The deadlines set out in (a) through (e) shall be subject to a force majeure provision to address delays resulting from events, causes or circumstances beyond the control of Defendant or its contractors, subcontractors, consultants or vendors.

10.    <u>Toxicity</u>.

    a.    Defendant shall complete a Toxicity Identification Evaluation (TIE) per EPA-821-R-02-013, and prepare a TIE Report detailing the TIE's methodology and findings, within 90 days of the effective date of this consent decree. During the same 90-day period, Defendant shall review the Materials Safety Data Sheet (MSDS) for each disinfectant/sanitizing agent used at the Plant, and for any additional chemical that may find its way into the Plant's wastewater, shall identify all toxic agents for which substitutes may be available or for which use protocol modifications may be available, and shall identify all such substitutes and use protocol modifications. Defendant shall also review the MSDS sheets to identify any potential (total dissolved solids) TDS contributors.

    b.    Defendant shall submit the TIE Report to Plaintiffs when completed. The MSDS review shall be treated as confidential business information by the parties.

11. <u>Specific Conductance</u>. Within 45 days of the effective date of this Consent Decree, Defendant shall perform a TDS analysis and specific ion analysis of the water in each source-water well. Once identified, "problem" wells shall be removed from service, modified, or flow balanced to reduce the well's impact on effluent conductance concentrations within 30 days. A problem well is one in which water samples exceed 500 umhos/cm for specific conductance. Defendant shall establish the correlation between specific conductance and TDS for each source water well on a quarterly basis.

12. <u>Water Use Evaluation</u>.

    a. Within 45 days of the effective date of this consent decree, Defendant shall conduct a water use audit to determine ways to reduce water use and reuse/recycle water during poultry processing and throughout the Plant. This audit shall include, but not be limited to, (i) investigating the separation of sanitary wastewater from non-sanitary wastewater and reusing the non-sanitary wastewater, and (ii) reusing water in the killing process. The results of the audit shall be treated as confidential business information by the parties.

    b. Within 90 days of the effective date of this consent decree, Defendant shall submit to Plaintiffs a study on water reduction and water reuse/recycling opportunities for the Plant. The parties acknowledge that implementation of reuse/recycling opportunities at the Plant may require approval by USDA.

13. <u>Evaluation of Alternatives to Existing Discharge, and Elimination of Discharge to the Suwannee</u>.

    a. Defendant shall continue to evaluate alternatives to the existing permitted surface water discharge of treated wastewater to the Suwannee River as required by

Consent Order 16-1437 (see paragraphs 7(b): "Study"). In the Study, Defendant shall include, but not be limited to, the evaluation of the following:

    i. Treatment of all or a portion of the wastewater with reverse osmosis and disposal options for remaining concentrate;

    ii. Constructed wetland as: 1) an environmental buffer between dechlorination and the monitoring point; and 2) a groundwater recharge wetland;

    iii. Conversion of the facultative pond to a three-in-series sequence (baffled anoxic – aerated – baffled settling);

    iv. Land application to a sprayfield owned or operated by Defendant;

    v. Land application by a third party agricultural operation.

    b. In its evaluation of alternatives, Defendant shall include an assessment of the environmental impact of each alternative, including the impact on wildlife and possibility of groundwater and aquifer contamination.

    c. Defendant shall provide a draft of the completed Study document to Plaintiffs for review and comment no later than 45 days prior to the due date in the consent order; Plaintiffs have up to 21 days, upon receipt, to provide comments to Defendant for it to address and finalize in the submittal to FDEP. Defendant shall cover costs, up to $50,000.00 for Plaintiffs' expert to conduct this review.

    d. Defendant shall submit the completed Implementation Plan to Plaintiffs according to the deadline in paragraph 7(c) of the Consent Order.

    e. If FDEP approves the Implementation Plan under paragraph 7(c) of the Consent Order and directs Defendant to eliminate wastewater discharge from its existing outfall to the Suwannee River, Defendant shall expeditiously (i) submit any required permit

applications to FDEP, (ii) initiate and complete implementation plan measures, and (iii) cease surface water discharges once the alternative discharge mandated by the implementation plan is operational. In addition, unless a government agency requires that the Plant's outfall pipe remain, Defendant shall remove the outfall pipe from the Suwannee River and Suwannee river bank (i) within one year of eliminating the discharge to the Suwannee River, or (ii) within one year of obtaining required state, federal or local permits to remove the pipe, whichever is later.

14. <u>Operator Training</u>. Within 90 days of the entry of this agreement, Defendant shall perform an assessment of operator training for all wastewater treatment and poultry processing water management units within the facility.

V.   PAYMENTS FOR VIOLATIONS

15. Within 30 days of this Court's approval of this Consent Decree, Defendant shall pay a civil penalty to the U. S. Department of Treasury in the amount of $130,000.00 in settlement of the alleged violations that are the subject of this suit. The parties acknowledge that Defendant has previously paid a penalty in the amount of $50,000.00 to the State of Florida as part of an FDEP Consent Order arising from some of the same permit exceedances. The agreed upon civil penalty of $130,000.00 is intended to be part of a total of $180,000.00 in civil penalties to state and federal authorities.

16. Within 30 days after the Effective Date of this Consent Decree, Defendant shall pay the sum of $1,300,000.00 to Stetson University, Inc. with a mailing address of 421 North Woodland Blvd Unit 8262 DeLand, Florida 32723. Stetson University, Inc. is a 501(c)(3) tax-exempt entity. Stetson University, Inc. shall agree, as a condition of receiving any funds pursuant to Paragraphs 16 and 18-19 of this Consent Decree to segregate such funds and utilize

the money exclusively for the creation of The Sustainable Farming Fund. The Fund Administrator shall be the Institute for Water and Environmental Resilience, which is a stand-alone center within the Stetson University Office of Academic Affairs.

    a.    The Fund Administrator shall solicit applications from, and disburse grants to, independent farmers located in the Suwannee River Basin within the State of Florida, as defined by USGS, for on-farm projects designed primarily to improve surface water quality, groundwater quality, and soil quality so as to reduce the farm's environmental impact. Eligible projects may also include those which meet sustainable farming practice standards as those standards may evolve for poultry, livestock, crop, and/or orchard farms, and may include: pasture rotation water systems, fencing, purchase and planting of trees and shrubs, shoreline restoration, wetlands enhancement, and conservation easements.

    b.    The Fund Administrator shall annually, from the date of the receipt of funds, submit a report to the parties [and the Court] summarizing applications received and funds paid out pursuant to The Sustainable Farming Fund.

17.    Payments made under Paragraphs 16 and 18-19 of this Consent Decree shall not be tax deductible by Defendant. Any public statement made by Defendant in any press release, in any oral or written material promoting Defendant's environmental or charitable practices or record, or in Defendant's Annual Reports, that refers to Defendant's payments to the organization described in Paragraph 16 shall include the following language: "Payments to this organization were made pursuant to the settlement of a Clean Water Act enforcement suit brought by Environment Florida and the Sierra Club."

9

## VI. STIPULATED PENALTIES

18. Stipulated penalties for exceedances of any of the four parameters identified in the amended complaint shall accrue as follows and shall be used to supplement the funding of the project described in Paragraph 16 of this Consent Decree.

| PARAMETER | PENALTY PER VIOLATION |
|---|---|
| CBOD daily max. | 1st violation = $2,000<br>2nd violation, and all violations thereafter = $3,000 |
| CBOD max. monthly avg. | 1st violation = $3,000<br>2nd violation, and all violations thereafter = $5,000 |
| Specific Conductance daily max. | 1st violation = $2,500<br>2nd violation, and all violations thereafter = $3,000 |
| Total Nitrogen annual max. | 1st violation = $3,000<br>2nd violation, and all violations thereafter = $5,000 |
| Toxicity | 1st quarter in which there is a violation = $5,000 on the date of the failed test, and $85.00 per day until a passed test<br>2nd and all additional quarters in which there is a violation = $7,500 on the date of the failed test, and $170.00 per day until a passed test |

19. If Defendant fails to timely perform the work set forth in Paragraphs 9-14, Defendant shall be subject to the following stipulated penalties:

| PERIOD OF VIOLATION | PENALTY |
|---|---|
| 1-30 days | $250 |
| 31-60 days | $1,000 |
| over 60 days | $2,500 |

20. Stipulated penalty payments shall be payable monthly, on or before the fifteenth of each month succeeding the month of the violation, and shall be payable to the Fund. Defendants shall notify Plaintiffs [and the Court] in writing of any payment of a stipulated penalty. No stipulated penalties shall accrue for exceedances resulting from samples taken as part of a study or assessment of new or modified treatment methods such as pH adjustment, TIE

implementation, or similar assessments that are not routine reportable compliance assessments as required under the permit.

21. Payments made under Paragraphs 16 and 18-19 do not preclude Plaintiffs from pursuing enforcement of any of the terms of this Consent Decree by the Court.

22. Stipulated penalties shall be due automatically and without notice.

## VII.   COSTS OF LITIGATION

23. Consistent with 33 U.S.C. § 1365(d), within 30 days of this Court's approval of this Consent Decree, Defendant shall pay $295,000.00 by company check to the National Environmental Law Center for Plaintiffs' costs of litigation, including attorneys' fees.

## VIII.   FORCE MAJEURE

24. "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendants, of any entity controlled by Defendants, or of Defendants' contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendants' best efforts to fulfill the obligation. An increase in costs, a change in financial circumstances, or Defendant's economic inability to comply are not Force Majeure events.

25. If any event occurs that causes or may cause delay in the performance of any obligation under this Consent Decree, Defendant shall notify Plaintiffs within ten working days of the date on which Defendant became aware of the potential delay. Upon notification, Plaintiffs shall have the right to request all necessary documentation explaining the potential delay. If requested, Defendant shall have ten working days from the date of the request to provide the documentation. If Defendant requests an extension of the deadlines specified in this Consent Decree, Plaintiffs shall have the right to grant all or part of the extension requested. If

the parties cannot reach agreement, Defendant shall have the right to apply to the Court for an extension of time, but shall have the burden of proving to the Court that refusal by Plaintiffs to grant the requested extension was unreasonable based on the information then available to Plaintiffs. In no event will Defendant be required to pay stipulated penalties during the time between the date which Plaintiffs receive such a request from Defendant and the date which a final decision is issued regarding such request. If the final decision denies Defendant's request for an extension, Defendant shall pay all stipulated penalties that were deferred during the pendency of the request.

## IX. ENFORCEMENT

26. The Court shall retain jurisdiction of this case until the termination of the Consent Decree to enforce the terms and conditions of the Consent Decree, to modify the Consent Decree, and to resolve any disputes arising hereunder. In the event Defendant fails to comply with any provision of this Consent Decree, the Plaintiffs may seek to enforce this Consent Decree by motion in this case.

## X. GENERAL PROVISIONS

27. This Consent Decree constitutes a settlement by the Plaintiffs of all claims for civil penalties and injunctive relief pursuant to the Clean Water Act prior to the date of entry of this Consent Decree, including but not limited to matters alleged in the complaint, amended complaint and notice letters.

28. The provisions of this Consent Decree shall be severable, and should any provision hereof be declared invalid or unenforceable, the remainder shall continue in full force and effect between the parties.

29. This Consent Decree shall constitute the entire integrated agreement of the parties. No prior or contemporaneous communications or prior drafts shall be relevant or admissible for purposes of determining the meaning or extent of any provisions herein in any litigation or any other proceeding.

30. A title used at the beginning of any paragraph of this Consent Decree may be used to aid in the construction of that paragraph, but shall not be treated as controlling.

31. Defendant shall not assert any claim of confidentiality for any documents or information provided to Plaintiffs pursuant to this Consent Decree, except as provided in the Joint Confidentiality Order (ECF 12-1) as approved by Order of the U. S. Magistrate (ECF 23) entered July 17, 2017. The Water Use Evaluation in Paragraph 12, and MSDS Evaluation in Paragraph 10. b., shall be treated as confidential business information.

32. Notification to a party shall be deemed submitted on the date it is postmarked. All correspondence concerning this Consent Decree and all documents that are submitted pursuant to this Consent Decree shall be addressed as follows.

For Plaintiffs:

Heather Govern
National Environmental Law Center
294 Washington Street, Suite 500
Boston, MA 02108

For Defendant:

Dave Townsend
Pilgrim's Pride Corporation
1770 Promontory Circle
Greeley, Colorado 80634

Winston Borkowski
Hopping Green & Sams
119 South Monroe Street, Suite 300
Tallahassee, Florida 32301

33. No changes, additions, modifications, or amendments of this Consent Decree shall be effective unless they are set out in writing and signed and agreed to by all parties to the Consent Decree and approved by the Court.

34. The effective date of this Consent Decree shall be the date of its entry.

## XI. TERMINATION

35. This Consent Decree shall terminate when Defendant has satisfied all of its obligations under Section IV (Compliance and Performance Obligations) and Paragraphs 15 through 23 (payment obligations). Defendants shall file a motion with the Court seeking termination of this Consent Decree and certifying that these obligations have been met.*

## XII. CONSENT TO ENTRY OF CONSENT DECREE

36. Each of the parties consents to entry of this Consent Decree, subject to the Court's approval of this Consent Decree. The undersigned representatives of each party certify that they are fully authorized by the party to enter into the terms and conditions of this Consent Decree and to execute and legally bind the represented parties to it. This Consent Decree can be signed in counterparts.

*The Consent Decree will remain in force until the Court enters an Order terminating it. (TJC)

## ENTRY BY THE COURT

**THIS CONSENT DECREE** is approved and hereby entered as an Order of this Court this 16 day of January 2018.

_____
United States District Judge

## SIGNATURES OF AUTHORIZED REPRESENATIVES OF THE PARTIES

FOR ENVIRONMENT AMERICA d/b/a ENVIRONMENT FLORIDA:

_____   11/9/17
John Rumpler
Staff Attorney

FOR SIERRA CLUB:

By: _____   11/13/17

Title: SIERRA Club FLORIDA ExCom, CHAIR

FOR PILGRIM'S PRIDE CORPORATION:

By: _____

Title: _____

**SIGNATURES OF AUTHORIZED REPRESENATIVES OF THE PARTIES**

FOR ENVIRONMENT AMERICA, d/b/a ENVIRONMENT FLORIDA:

_____

FOR SIERRA CLUB:

_____

FOR PILGRIMS' PRIDE CORPORATION:

By: _____[signature]_____     11-14-17

Title: ____Vice President____